UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

MARIETTA VALLEN, an individual,

Plaintiff,

v.

ALBERTSON'S LLC., a Foreign Limited-Liability Company; CHRISTENSEN DEVELOPMENT, LP, a Foreign Limited Partnership; TRAILS VILLAGE CENTER COMPANY, an unregistered Domestic Corporation dba TRAILS VILLAGE CENTER; DOES 1-20 and ROE BUSINESS ENTITIES 1-20, inclusive,

Defendants.

Case No. 2:24-cv-2155-EJY

**ORDER**

**I.    Background**

Pending before the Court is Plaintiff's Motion to Strike Defendant Albertson's LLC's Answer or for Other Sanctions the Court Deems Appropriate (the "Motion"). ECF No. 35. The Court reviewed the Motion, Defendant Albertsons LLC's[1] Opposition (ECF No. 36), and Plaintiff's Reply (ECF No. 37). The Court finds as follows.

Plaintiff moves the Court for an order striking Albertson's Answer based on "extraordinary spoliation of critical evidence." ECF No. 35 at 2. On June 2, 2024 Plaintiff fell after allegedly encountering a pothole located in the parking lot of an Albertson's store. *Id*. Albertson's overnight store manager, Jennifer Fargnoli, testified that she found Plaintiff in the pothole, helped Plaintiff to her feet, and walked Plaintiff to her car while Plaintiff hung on to a shopping cart. *Id*. at 5. Despite this testimony, the location, characteristics, and existence of this pothole are disputed in the motion practice before the Court. Indeed, Ms. Fargnoli clearly could not fully describe the pothole stating it was not "5 feet down or 6 feet down" but it was a "decent size" and "probably about 2 feet in length." *Id.* at 5-6 (quoting *id*. at 45).[2] Interestingly, Christensen Development, LP ("Christensen"),

_____

[1]    Hereinafter, "Albertson's" or Defendant.

[2]    Plaintiff did not separately attach her exhibits or include an index in violation of District of Nevada Local Rules. *See* LR IA 10-3, LR IC 2-2.,

the property management company responsible for the parking lot,[3] produced a 30(b)(6) witness who denied the pothole existed.  ECF No. 36-6 at 4.  In contrast, Plaintiff contends (ECF No. 35 at 4) Christensen's 30(b)(6) representative disclosed that a contractor performed substantial repairs to the site of Plaintiff's fall, but Plaintiff offers no cite, and the Court found nothing, to support this assertion.

Plaintiff highlights the undisputed fact that on the same day as her fall Albertson's completed an incident report that it sent to its third-party claims administrator, Sedgwick.  ECF No. 35 at 3.  The report stated Plaintiff "tripped and fell in the parking lot," identified the cause of the fall as "potholes/pavement," and concluded the fall resulted in injury to Plaintiff's hip.  ECF No. 35 at 24-25.  There is no dispute that Sedgwick responded to Albertson's requesting "video [of the incident] (1 hr before, 30 min. after), …photos of pot hole [sic.] in the parking lot (can be taken with cell phone), [and a] written statement from [Ms. Fargnoli]."  *Id*. at 30.  Albertson's did not take photographs and no surveillance footage was retained.

Plaintiff also points to Ms. Fargnoli's deposition testimony during which she identified the location of her fall.  *See* ECF No. 35 at 33-34, 51.[4]  Plaintiff further says Stephen Yoli, Albertson's Assistant Store Director, testified to the location Ms. Fargnoli identified as the site of Plaintiff's fall, and stated that it would have been captured on surveillance camera.  *Id*. at 7 (quoting *id*. at 50).  During his deposition, Mr. Yoli stated the failure to retain video was a mistake arising from his belief that the Store Director, Sharon Thomas, saved the video footage (although Mr. Yoli admitted that he and Ms. Thomas never spoke about whether video would be retained).  *Id*.  Mr. Yoli admitted he never inspected the parking lot for purposes of viewing the pothole in which Plaintiff claims she fell.  *Id*. at 49.

Altogether, Plaintiff argues Albertson's was on notice of reasonably foreseeable litigation as of the day of the incident based on completion of the incident report, Sedgwick's instructions, and

---

[3]    *See* ECF No. 36 at 7 (quoting ECF No. 36-4 at 5) ("under the terms of Albertsons' lease with Co-Defendant Christensen Development, it is the responsibility of Christensen as lessor to 'operate the parking areas and common facilities and keep and maintain such areas and facilities throughout the term in good repair and in clean, attractive and first-class condition.'")

[4]    Neither Plaintiff nor Albertson's provides any page from this portion of Ms. Fargnoli's deposition.  Thus, the Court cites to Christensen's 30(b)(6) and Stephen Yoli's depositions which reference this portion of Ms. Fargnoli's testimony.

the specific factual circumstances surrounding the fall including Plaintiff's age. *Id*. at 10-11. Plaintiff argues Albertson's had a duty to preserve surveillance video and "to secure the pothole for inspection," or at least create evidence by photographing it so that the location and size could be later determined. *Id*. at 12.

Plaintiff contends Albertson's had a culpable state of mind because it was on notice of potential litigation but failed to undertake any steps to preserve evidence specifically pointing to Albertson's failure "to document the pothole" itself and preserve surveillance footage of the incident. *Id*. Plaintiff asks the Court to strike Albertson's Answer or fashion an order stating Albertson's had notice of the pothole contending there were extraordinary circumstances, Albertson's acted with fault, the evidence was crucial to establishing notice, and no lesser sanctions will rectify the prejudice Plaintiff suffered. *Id*. at 13-20.

Albertson's contends Plaintiff cannot identify where she fell and that she did nothing to document that a pothole supposedly caused her fall. ECF No. 36 at 7, 10. Indeed, Albertson's says "Plaintiff has not demonstrated that a pothole even existed." *Id*. at 3. Albertson's argues that despite Mr. Yoli's testimony[5], there is nothing to support the conclusion that even if Plaintiff's fall was within the security camera view, the camera would have captured the incident because in early morning hours visibility would have been limited. *Id*. at 6-7. Albertson's submits it is likely the outside cameras "did not catch the exact incident" because the cameras have "limited field of vision," and points to still photographs from the surveillance cameras (taken at an unidentified date and time) to support the argument that the portion of the parking lot where Plaintiff fell is too far away from those cameras to have resulted in anything "meaningful" being captured. *Id*. at 2, 7; ECF No. 36-1.

In sum, Albertson's characterizes Plaintiff's Motion as an attempt to "convert unfounded speculation and her own evidentiary gaps into spoliation sanctions." ECF No. 36 at 12. Albertson's says it had no duty to "affirmatively create or collect evidence for Plaintiff's benefit," including no duty to photograph the pothole. *Id* at 3. Albertson's further avers it cannot be sanctioned for evidence that was never collected, and Sedgwick's instructions did not alter the law. *Id*. at 9-10.

---

[5] Albertson's discounts Mr. Yoli's testimony characterizing it as "vague generalit[ies] …, not specific to the actual incident." ECF No. 36 at 6.

Albertson's argues the creation of an incident report did not trigger the duty to preserve in this case because, unlike caselaw cited by Plaintiff, the evidence in this case was not tangible—that is, it was not involved in the incident—but video footage from an outside camera. *Id*. at 8-9.

Albertson's further submits that based on contractual provisions it did not have reasonable notice of potential litigation. *Id*. at 7-8. Specifically, Albertson's says it lacked responsibility for operating or maintaining the parking lot under its lease agreement with Christensen and would be indemnified from any claims arising from the parking lot. *Id*. Thus, Albertson's contends it is "natural that a defendant would not be on notice to preserve evidence relating to areas outside of their own premise." *Id*. at 9.

With respect to Plaintiff's allegation that the pothole was repaired without giving Plaintiff an opportunity to inspect it, Albertson's points to Plaintiff who fails to identify any evidence of a repair. *Id*. at 10. Albertson's says the only factual basis Plaintiff offers for the existence of the pothole is the testimony of Ms. Fargnoli, whose memory is doubted, and which testimony is refuted by Christensen's 30(b)(6) witness. *Id*. at 10-11. Finally, even if the Court finds spoliation, Albertson's argues the sanctions Plaintiff seeks are unwarranted. *Id*. at 12-16.

In Reply, Plaintiff argues Albertson's failure to preserve is not excused by its lease agreement or indemnification provision in its agreement with Defendant Trails Village Center Company ("Trails Village"). ECF No. 37 at 2-3. Plaintiff says Albertson's had some form of control and access to the pothole, and the control by Trails Village did not absolve Albertson's of its duty to preserve evidence. *Id*. at 4. Plaintiff returns to Albertson's duty to photograph and measure the pothole (*id.)* and then argues each of Albertson's reasons for not saving evidence is specious. *Id*. at 5-7. Plaintiff submits a finding of spoliation is proper if the defendant had custody or control over the evidence and Albertson's had exclusive control over the surveillance system. *Id*. at 3, 5.

**II.    Legal Standard**

Spoliation is a serious allegation the Court must carefully analyze. Spoliation is defined as:

> the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. ... A party must preserve evidence it knows or should know is relevant to a claim or defense by any party, or that may lead to the discovery of relevant evidence. ... The duty to preserve arises not only during litigation, but also extends

to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation.

*Gonzalez v. Las Vegas Metropolitan Police Dept.*, Case No. 2:09-cv-00381-JCM-PAL, 2012 WL 1118949, at *5 (D. Nev. Apr. 2, 2012) (internal citations omitted).  The party seeking sanctions has the burden of proving "by a preponderance of the evidence that the accused party actually destroyed, altered, or failed to preserve relevant evidence."  *U.S. E.E.O.C. v. Wedco, Inc.*, Case No. 3:12-cv-00523-RCJ-VPC, 2014 WL 4635678, at *2 (D. Nev. Sept. 15, 2014), *citing LaJocies v. City of N. Las Vegas*, Case No. 2:08-cv-00606-GMN-GWF, 2011 WL 1630331, at *1 (D. Nev. Apr. 28, 2011).

The Court's power to sanction for spoliation is derived from its inherent authority or Federal Rule of Civil Procedure 37(e).  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006).  While "inherent authority sanctions remain available for physical evidence," (*Martin v. Smith's Food & Drug Centers, Inc.*, Case No. 2:22-cv-00833-APG-DJA, 2024 WL 3084737, at *3 (D. Nev. June 20, 2024), *report and recommendation adopted*, Case No. 2:22-cv-00833-APG-DJA, 2024 WL 3890619 (D. Nev. Aug. 20, 2024), the authority to sanction for destruction or alteration of electronically stored information ("ESI") is limited by Fed. R. Civ. P. 37(e).  That is, when considering whether to sanction for destruction or alteration of ESI, such as surveillance video footage, Rule 37(e), is interpreted as precluding reliance on inherent authority.  *Gregory v. State of Montana*, 118 F.4th 1069, 1072 (9th Cir. 2024).

If a court finds spoliation of physical evidence and, thus, exercises its inherent authority, the court "should choose the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim."  *Id*. at 4.  Descending in the level of severity, possible sanctions include striking an answer, ordering a rebuttable presumption, or entering an adverse jury instruction.  *Id*.  To warrant striking an answer, the plaintiff must establish by clear and convincing evidence that defendant engaged in bad faith spoliation and prejudice.  *Micron Technology, Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1328–29 (9th Cir. 2011).  Imposing a rebuttable presumption requires a showing the spoliating party consciously disregarded its obligation to preserve evidence.  *Soule v. P.F. Chang's China Bistro, Inc.*, Case No. 2:18-cv-02239-GMN-EJY, 2020 WL 959245, at *4 (D. Nev. Feb. 26, 2020).  Lastly, a Court may impose an adverse jury instruction if there was simply

notice of the evidence's relevance to litigation. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).

When considering whether to sanction for the loss or alteration of ESI the Court must consider that Rule 37(e)(2) permits imposition of "severe sanctions such as adverse inference jury instructions or dismissal, but only if it finds that the spoliating party 'acted with the intent to deprive another party of the information's use in the litigation.'" *Collins v. Autozone, Inc.*, Case No. 2:22-cv-00316-CDS-BNW, 2024 WL 1054684, at *3 (D. Nev. Mar. 11, 2024) (quoting Fed. R. Civ. P. 37(e)(2)). Intent "is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones v. Riot Hospitality Group LLC*, 95 F.4th 730, 735 (9th Cir. 2024). A district court may consider circumstantial evidence to determine intent such as "the timing of destruction, affirmative steps taken to delete evidence, and selective preservation." *Id*. If the Court finds no intent, but nonetheless finds prejudice to the moving party from the loss of the information, the Court may only order proportionate sanctions that are no greater than necessary to cure the prejudice. Fed. R. Civ. P. 37(e)(1).

**III.   Discussion**

a.   <u>Plaintiff Has Not Established Spoliation of the Pothole Itself, Photographs of the Pothole, or a Physical Description of the Pothole</u>.

Well established law holds that "courts in this district and circuit have repeatedly declined to 'impose a duty' on defendants 'to preserve [a] spill' or 'create photographic evidence' of a spill in anticipation of litigation." *Watson v. Bed Bath & Beyond, Inc.*, Case No. 2:19-cv-01110-JAD-BNW, 2021 WL 5122360, at *3 (D. Nev. July 23, 2021); *see also Fowler v. Wal-Mart Stores, Inc.*, Case No. 2:16-cv-450-JCM-GWF, 2017 WL 3174915, at *3 (D. Nev. July 26, 2017) ("The law does not impose a duty on Wal-Mart to preserve the spill in the main cross aisle, nor does the law require Wal-Mart to create photographic evidence thereof."). While a spill and a pothole can be differentiated by virtue of the physical aspects of the two, the reasoning underlying the lack of duty is equally applicable.

First, there are both practical implications to this repeated holding and logical ones as would apply to a pothole. The company managing the parking lot identified the surface as black concrete

(ECF No. 36-6 at 5-6); importantly, Plaintiff offers nothing to contradict this testimony.  *See* ECF Nos. 35 and 37.  Plaintiff offers no discussion regarding how a pothole occurring in concrete could have been retained; nor did the Court find any caselaw demonstrating potholes have ever been retained in personal injury cases.  One might consider whether retaining a pothole that appears in concrete would require jackhammering or otherwise digging up the area around the pothole and, if that was done, whether the pothole would have been retained in its original form.  The Court must apply simple logic and sound reasoning to whether an alleged instrument causing a fall—here a pothole—can be retained.  The Court finds, just like a spilled liquid, there is no reasonable or logical way to achieve this outcome.

Second, Plaintiff's fall occurred on June 2, 2024.  ECF No. 35 at 5.  Her counsel filed the original Complaint in state court on September 13, 2024, approximately three and one-half months later.  ECF No. 1-2 at 1.  Plaintiff made no request to inspect, let alone retain the pothole, before her Complaint was filed.  While the duty to retain relevant evidence when a party reasonably knows litigation is foreseeable and does not depend on the request to inspect or preserve evidence, such requests may create a duty where one would not otherwise exist.  *See e.g. Small v. Univ. Med. Ctr.*, No. 2:13-CV-0298-APG-PAL, 2018 WL 3795238, at *59 (D. Nev. Aug. 9, 2018) (noting that a party was on notice and had a legal duty to preserve ESI no later than when it received a preservation letter, when it was arguable whether the duty to preserve evidence arose months earlier); *cf. Fujitsu Ltd. v. Federal Exp. Corp.*, 247 F.3d 423, 436 (2nd Cir. 2001) (affirming the trial court's refusal to impose spoliation sanctions where a party was notified of damage but did not make a request to inspect the item until years later).  Moreover, while not binding, the Court notes the Second Circuit reversed a decision to grant an adverse inference instruction, in part, because the defendant had not requested preservation of the evidence at issue.  *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 458 (2d Cir. 2007).  Here, there is nothing offered by Plaintiff suggesting, let alone showing, she (or her counsel) ever requested to inspect the pothole at any time.  Finally, despite a nationwide search for case law holding that failure to retain a pothole known to be relevant to a case was support for a spoliation determination, the Court found none.  Based on the foregoing, the

Court concludes Albertson's did not engage in spoliation based on the failure to retain the pothole that Plaintiff says caused her fall.

Regarding Plaintiff's argument that Albertson's should have "properly record[ed] or document[ed] the pothole" with photographs, well settled law establishes Defendants had no duty to create evidence. *Mizzoni v. Allison*, Case No. 3:15-cv-00313-MMD-VPC, 2018 WL 3203623, at *4 (D. Nev. Apr. 4, 2018), *report and recommendation adopted*, Case No. 3:15-cv-00313-MMD-VPC, 2018 WL 2197957 (D. Nev. May 14, 2018) (citing *GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 357 (S.D.N.Y. 2012), *aff'd,* Case No. 11-cv-1299 HB, 2012 WL 1849101 (S.D.N.Y. May 21, 2012)).  Indeed, "before a court will sanction a party for spoliation of relevant evidence, the moving party must demonstrate that the relevant evidence existed." *Garcia-Garrido v. Outback Steakhouse of Florida, LLC*, Case No. 2:16-cv-01294-CWH, 2018 WL 2434062, at *4 (D. Nev. May 30, 2018) (internal citation omitted).  There is no argument, let alone evidence, that photographs ever existed in this case.  There is also no argument or evidence that drawings or other documentation was created to document the physical location or attributes of the area of the parking lot where Plaintiff fell.  This evidence—never having existed—could not have been spoliated.

> b.   Sedgwick's Recommendations Did Not Create a Legal Duty to Preserve the Pothole or What Never Existed.

Setting aside video surveillance footage discussed below, Plaintiff's argument that Albertson's spoliated based on Sedgwick's instruction to photograph the pothole (ECF No. 35 at 10) is unsupported by law.  Plaintiff offers no authority supporting the contention that Sedgwick's recommendations created a legal duty to create evidence, when such duty is contrary to law.  On this point, at least two district courts have found an internal policy relating to the retention of evidence alone does not give rise to a duty to preserve.  *Athay v. Washinton*, Case No. 3:22-CV-5422-JHC-DWC, 2023 WL 3892328, at *6 (W.D. Wash. June 8, 2023) ("Defendants' document retention policies do not show that they should reasonably have anticipated litigation and thus had a duty to preserve camera footage.  Instead, any violation of those policies would become relevant later in the spoliation analysis to determine the existence of a culpable state of mind—*if* the threshold issues were established."); *cf. McCabe v. Wal-Mart Stores, Inc.*, Case No. 2:14-cv-01987-JAD-CWH, 2016

WL 706191, at *3 (D. Nev. Feb. 22, 2016) ("Even if other information arguably should have been collected per Wal-Mart's policy … [t]he Court will not sanction Wal-Mart for failing to collect evidence that [Plaintiff] does not establish existed at the time of the report—a matter quite different from the failure to preserve existing evidence.").

As discussed below, Albertson's report to Sedgwick, and its response, may be evidence that litigation was reasonably anticipated or foreseeable and or that Albertson's had a culpable state of mind; however, Plaintiff offers nothing—not contractual obligations or legal authority—for the proposition that a third party administrator's letter suggesting certain actions be taken imposes an obligation to create evidence where no legal duty to do so otherwise exists. The Court finds Albertson's did not spoliate evidence by failing to abide by Sedgwick's direction to take photographs or otherwise document the location, size or other characteristics of the pothole.

> c.   Albertson's Spoliated the Surveillance Footage.

The Court finds that video surveillance footage constitutes ESI. *Su v. NAB LLC*, Case No. 2:21-cv-00984-JCM-EJY, 2023 WL 9494449, at *2 (D. Nev. Dec. 4, 2023). Thus, the Court analyzes the following criteria established by Fed. R. Civ. P. 37(e): (1) whether there was a duty to preserve the ESI in the anticipation or conduct of litigation; (2) whether the ESI was lost because a party failed to take reasonable steps to preserve it; and (3) whether the ESI can be restored or replaced through additional discovery. *Lopez v. Cardenas Markets*, LLC, Case No. 2:21-cv-01915-JCM-BNW, 2023 WL 3182658, at *2 (D. Nev. May 1, 2023).

> 1.   *Indemnification does not relieve Albertson's of its duty to preserve relevant evidence when litigation is foreseeable.*

Albertson's cites no law for the proposition that an indemnity provision in a lease agreement relieves a party of the duty to preserve evidence. An indemnity clause provides an opportunity for one responsible party to obtain recovery from another but does not relieve a responsible party from liability altogether. *E.g. In re Keenan*, 467 B.K. 191, 199 (S.D. Cal. 2011) ("Indemnity does not mean that the indemnified party is immune from liability. To the contrary, where an indemnity provision protects against liability, the indemnitor's obligation arises when the liability of the indemnitee is established."). As Black's Law Dictionary states, an indemnity clause is: "[a]

contractual provision in which one party agrees to answer for any specified or unspecified liability or harm that the other party may incur." *Indemnity Clause*, BLACK'S LAW DICTIONARY (12th ed. 2024); *Am. Fed. Sav. Bank v. Cnty. of Washoe*, 802 P.2d 1270, 1276 n.3 (Nev. 1990) (internal citations omitted) ("Whether express or implied, indemnity shifts an entire monetary loss from one party to another."). That Albertson's may be reimbursed for a claim arising from an accident in the parking lot does not change the fact that the injured party may sue Albertson's. *See Walis v. Fernandez*, Case No. 2:16-CV-00467-RGK-JEM, 2024 WL 3304522, at *4 (C.D. Cal. Jan. 5, 2024) ("An indemnification agreement does not excuse the indemnitee from liability; a third party may still sue the indemnitee for his tortious conduct. Rather, the indemnification agreement allows the indemnitee to seek legal defense or reimbursement from the indemnitor."). And, if Albertson's may still be sued by a third party, then as a defendant or potential defendant it remains under a duty to preserve evidence based on reasonably foreseeable litigation, regardless of whether it may ultimately be reimbursed under an indemnity agreement.

2.    *Albertson's fails to demonstrate it lacked sufficient control to relieve them of a duty to preserve evidence.*

To impose sanctions, the movant must show "the party having control over the evidence had an obligation to preserve it when it was destroyed or altered." *Suroweic v. Capital Title Agency, Inc.*, 790 F.Supp.2d 997, 1005 (D. Ariz. 2011) (internal citations omitted). Albertson's appears to focus on the parking lot over which it says it has no control under the terms of the lease agreement with Christensen. ECF No. 36 at 7. Albertson's posits that it did not spoliate surveillance footage capturing the parking lot because the area was one that was beyond its control. *Id*. at 11-12. However, "the duty to preserve is triggered not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Aramark Mgmt., LLC v. Borgquist*, Case No. 8:18-cv-01888-JLS-KES, 2021 WL 864067, at *3 (C.D. Cal. Jan. 27, 2021), *report and recommendation adopted,* Case No. 8:18-cv-01888-JLS-KES, 2021 WL 863746 (C.D. Cal. Mar. 8, 2021)). If the determination of liability were dispositive of the duty to preserve, the duty would not arise before litigation commences. Thus, the Court finds the question is not who is ultimately determined to control the parking lot, but whether

Albertson's had reason to know that the evidence was potentially relevant to reasonably foreseeable litigation and failed to take reasonable steps to preserve it.

Here, Albertson's does not dispute that it controlled the surveillance cameras, and it is the video from those cameras that was not retained. To the extent Albertson's argues it did not spoliate because the footage—despite being within Albertson's control—captured an area outside of Albertson's contractual control, Defendant fails to offer any caselaw to support this proposition. Instead, it is the evidence pertaining to whether Albertson's had a legal obligation to retain the footage that must be examined to determine if there was spoliation and, if evidence was spoliated, whether that spoliation was intentional under Rule 37(e)(2) or falls under the standard set by Rule 37(e)(1).

*3.    Relevant surveillance video existed.*

Albertson's focuses on the wrong inquiry when it contends it had no duty to retain video surveillance footage because it would not likely have captured Plaintiff's accident. Instead, the issue is whether video surveillance of the parking lot area in which Plaintiff fell was evidence Albertson's knew or should know was relevant to a claim or defense by any party, or that may lead to the discovery of relevant evidence. *Gonzalez*, 2012 WL 1118949, at \*\*5, 7; *Patton v. Wal-Mart Stores, Inc.*, Case No. 2:12-cv-02142-GMN-VCF, 2013 WL 6158467, at \*3 (D. Nev. Nov. 20, 2013). Here, what is undisputed is that Albertson's had outside cameras at least one of which was identified as directed at the area in which Ms. Fargnoli testified she found Plaintiff after her fall. ECF No. 36 at 7. Whether that camera, or any camera, captured the incident is secondary to whether video should have been kept such that the litigants could analyze what was and was not recorded.

What Albertson's could not do is unilaterally declare, without ever viewing the video, that no video would have captured the event at issue. Indeed, that Albertson's does not believe the video footage would have shown Plaintiff's fall because of the time of day or distance from the event does not absolve Albertson's of retaining what surveillance video did show. Surveillance video "need not have captured *all* of the alleged conduct in order to be relevant." *Collin*, 2024 WL 1054684, at \*4 (emphasis in original). "Instead, … video is relevant if it could have corroborated (or disproven) at least some aspects of Plaintiff's narrative." *Id*. "Whether 'nothing' or 'something' was caught on

11

film is an evidentiary question of relevance. This determination is the court's, and not [the party's], to make." *Patton*, 2013 WL 6158467 at *5 (citing Fed. R. Evid. 401).

Albertson's argues that because the surveillance video stills show the cameras are primarily focused on the area closest to the store, the surveillance footage would not have captured anything relevant to Plaintiff's claim. ECF No. 36 at 15. However, surveillance footage would be relevant if it had any tendency to corroborate or disprove any portion of Plaintiff's narrative. *Collins*, 2024 WL 1054684 at *4. It does not matter whether the surveillance footage captured Plaintiff's fall in high-definition quality video or through a partially obstructed view. The fact of the matter is surveillance footage may have helped to prove or disprove Plaintiff's narrative by showing her fall and the surrounding sequence of events and that is precisely what makes it relevant. In this way, Albertson's struggles with the same "overarching problem" displayed in *Patton*, which is "that 'nothing' is something. Even if 'nothing' was caught on film," footage from the surrounding cameras is nonetheless probative. *Patton*, 2013 WL 6158467 at *5. The Court therefore finds that no matter what the unpreserved surveillance video may have shown, the video was relevant to reasonably foreseeable litigation.

### 4.      Litigation was reasonably foreseeable.

Rule 37(e) is based on the common law duty to preserve relevant information when litigation is pending or reasonably foreseeable. Fed. R. Civ. P. 37, Advisory Committee Note to 2015 Amendment (the "2015 Advisory Note"). Determining if litigation is "reasonably foreseeable" is evaluated under an objective standard. *Micron Technology, Inc.*, 645 F.3d at 1320. The mere existence of a potential claim or the distant possibility of litigation is not sufficient to trigger a duty to preserve. *Id*. Moreover, "[t]he rule does not apply when information is lost before a duty to preserve arises." *Mork v. Russell*, Case No. 3:21-cv-00077-MMD-CSD, 2023 WL 7545518, at *2 (D. Nev. Nov. 14, 2023) (internal citations and quotations omitted).

"Whether an incident report triggers a duty to preserve evidence must be assessed in light of the factual circumstances." *Mendez v. Hobby Lobby Stores, Inc.*, Case No. 3:23-cv-00181-ART-CLB, 2025 WL 1951012, at *8 (D. Nev. July 15, 2025). The court in *Mendez* adopted reasoning found in *Roberts v. Smith's Food & Drug Centers, Inc.*, Case No. 2:11-CV-01917-JCM, 2014 WL

2123213, at **4-5 (D. Nev. May 21, 2014).  That is, visible injury and allegations of pain combined with an incident report were sufficient to put Defendant on notice of reasonably foreseeable litigation.  *Id*.; *see also Gonzalez v. Target Corporation*, Case No. CV22-9089 JAK (PVCx), 2024 WL 589147, at *4 (C.D. Cal. Jan. 23, 2024), *report and recommendation adopted,* Case No. LA CV22-09089 JAK (PVCx), 2024 WL 580544 (C.D. Cal. Feb. 13, 2024) (finding a contemporaneous investigation of an incident and a guest incident report was sufficient to put Target on notice of potential litigation).

Unlike the lack of duty to create evidence—whether by taking photographs or creating other documents depicting the pothole—that was not impacted by Sedgwick's letter, the decision in *Aiello v. Kroger Co.*, Case No. 2:08-CV-01729-HDM, 2010 WL 3522259, at *3 (D. Nev. Sept. 1, 2010), demonstrates Albertson's was on notice of potential litigation when Mr. Yoli sent the incident report to the third party administrator.  In *Aiello*, the store manager sent surveillance footage to the corporate risk management department after a fall in the store.  There, a plaintiff fell in the defendant's grocery store and the incident was captured on surveillance footage.  *Aiello*, 2010 WL 3522259 at *1.  After reviewing the surveillance footage, a store manager sent the footage to the corporate risk management headquarters.  *Id*.  The court found that although defendant was "arguably" on notice of potential litigation from the moment the incident report was created, it was clearly on notice upon sending the tape to the corporate headquarters.  *Id*. at 3.

Here, Plaintiff is a woman in her eighties who had to be helped off the ground by Albertson's overnight store manager and walked to her car after which Albertson's created an incident report.  ECF No. 35 at 10.  While this alone may have been sufficient to put Albertson's on notice of potential litigation, the Court finds Albertson's subsequent actions galvanize a finding that it was on notice.  Just like Kroger in *Aiello*, Albertson's contacted its claim administrator regarding Plaintiff's fall and promptly received instructions that included preservation of surveillance footage.  These facts, when considered together, leave little doubt that Albertson's was on *reasonable* notice of potential litigation at the time of Plaintiff's fall.[6]

---

[6]    At one point, Albertson's goes as far as to liken itself to another business in the shopping mall with surveillance cameras, or even "any random passerby who happened to record an area of the parking lot."  ECF No. 36 at 8, 9. However, unlike another business in a shopping mall (or a passerby on the street) Plaintiff fell outside of Albertson's,

*5.*      *Albertson's did not undertake reasonable steps to preserve ESI.*

Albertson's duty was to take "'reasonable steps' to preserve [ESI] …; [Rule 37(e)] does not call for perfection." *Mork*, 2023 WL 7545518 at *5 (citing the 2015 Advisory Note). When evaluating whether a party took reasonable steps to preserve were taken, the Court must consider: (1) a party's "good-faith operation of an electronic information system"; (2) a "party's sophistication with regard to litigation"; (3) "the extent to which a party knew of and protected against such risks"; and (4) whether the information is "destroyed by events outside the party's control." The 2015 Advisory Note. Application of these factors weigh against Albertson's.

The Court takes judicial notice of the fact that Albertson's is publicly traded on the New York Stock Exchange and reports billions in annual sales.[7] *Investor Relations*, Albertsons Companies, https://albertsonscompanies.com/investors/overview/default.aspx. Thus, like other major retailers, Albertson's sophistication cannot be seriously doubted. *See Tripp v. Walmart*, Case No. 8:21-cv-510-WFJ-SPF, 2023 WL 399764, at *5 (M.D. Fla. Jan. 25, 2023) (finding the failure to preserve "inexplicable" a sophisticated company like Walmart), *Jennings v. TJX Companies, Inc.*, Case No. CV 122-035, 2024 WL 4255344 (S.D. Ga. Sept. 20, 2024), *Donofrio v. Ikea US Retail, LLC*, Case No. CV 18-599, 2024 WL 1998094, at *26 (E.D. Pa. May 6, 2024); *but see Est. of Bosco by and Through Kozar v. Cnty. of Sonoma*, 640 F.Supp.3d 915, 926 (N.D. Cal. 2022) (finding a county jail to be a sophisticated party). The sophistication consideration encourages courts to be sensitive to parties like individual litigants who "may be less familiar with preservation obligations than others who have considerable experience in litigation." *Mork*, 2023 WL 7545518 at *5. However, Albertson's is in no need of this leniency.

The evidence demonstrates Albertson's took no steps to preserve video footage of the parking lot that may have captured Plaintiff's fall. That fact, which is undisputed, simply belies

received assistance from Albertson's employees, Albertson's created the incident report, Albertson's sent the incident report to its claims administrator, and its claim administrator gave Albertson's instructions to preserve evidence. These factual circumstances take Albertson's out of the purview of being just another tenant in the complex, let alone another person on the street.

[7]      A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts have generally found websites and their contents may be judicially noticed. *Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F.Supp.3d 139, 146 (N.D. Cal. 2020) (collecting cases).

14

reasonableness. Moreover, Albertson's does not argue that its surveillance video was lost due to a reason beyond its control such as a software attack or a natural disaster. *See* the 2015 Advisory Note. Albertson's only explanation for why video footage was not retained is its subjective post hoc belief that the outside cameras would not have captured Plaintiff's fall because of distance and time of day. Of course, whether either of these reasons would have proven true is unknown because nothing was retained.

In sum, Albertson's misses the point with its arguments. The question is not whether the footage would have shown the fall at question, but whether, as a sophisticated party, there was any effort to retain the footage no matter what it showed. Indeed, the only evidence before the Court relating to the failure to retain surveillance footage is the testimony of Mr. Yoli admitting that he did not review the footage because he assumed the Store Director would handle it. ECF No. 35 at 49-50. In the absence of any reason video surveillance footage could not be retained, and given the duty to retain footage whether it would have helped or hurt Albertson's case, the Court finds, Albertson's did not undertake reasonable efforts to preserve the surveillance footage.

### 6.    *It does not appear the ESI can be restored or replaced.*

Rule 37(e) only applies when the ESI is lost. *Mork*, 2023 WL 7545518 at *5. If information can be restored or replaced through additional discovery no sanctions should issue. *Id*. The information before the Court demonstrates, conclusively, that there is no video footage that can be recovered. Thus, the Court finds the surveillance footage is no longer available, it is properly treated as irreplaceable.[8]

### d.    Sanctions.

#### 1.    *Plaintiff does not meet the standard for sanctions under Rule 37(e)(2).*

As explained above, Federal Rule of Civil Procedure 37(e)(2) requires a finding of intent, that is "willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Riot Hospitality*, 95 F.4th at 735. Here, Plaintiff seeks the most severe sanctions available based on what is stated to be "extraordinary circumstances," which are described, at best, as

---

[8] Of course, if Albertson's can produce any footage in question, the Court will reconsider its ruling in this case. *See Mork*, 2023 WL 7545518 at *5.

Plaintiff's recognition of their peculiar circumstances. *See* ECF No. 35 at 14-15. This case centers on Plaintiff's trip and fall because of an alleged pothole in Albertson's parking lot. And while potholes do not vanish into thin air, there is no evidence establishing the existence of the pothole outside of testimony. Nonetheless, Plaintiff contends, "[i]nstead of galloping towards trial, Plaintiff is forced to limp forward relying on an incomplete record." *Id.* at 15. However, to seek the most severe sanctions available under Rule 37(e)(2) for loss of the surveillance footage, Plaintiff must demonstrate Albertson's acted with intent to deprive her of the surveillance footage. *Nomadix, Inc. v. Guest-Tek Interactive Entertainment Ltd.*, Case No. 2:16-cv-08033-AB-FFMx, 2019 WL 8355729, at *2 (C.D. Cal. Oct. 16, 2019); *Collins*, 2024 WL 1054684 at *3. From the record before the Court, there is nothing supporting such intent. Instead, the evidence demonstrates Albertson's was careless when it failed to retain any surveillance footage. Testimony from the Assistant Store Director reflects he did not preserve video in accordance with Sedgwick's instructions because he assumed the Store Director would handle the matter. ECF No. 35 at 49-50. While the Assistant Store Director was wrong, this testimony does not support intent, but a failure to take steps it should have based on a bad assumption. In the absence of any evidence that Albertson's intentionally disposed of the surveillance video in order to deprive Plaintiff of this evidence, there is insufficient basis to strike Albertson's Answer or otherwise enter case ending sanctions. *Nomadix*, 2019 WL 8355729 at *2; *Baker v. O'Reilly*, Case No. C21-361 MJP, 2025 WL 1635253, at *7 (W.D. Wash. June 9, 2025).

Further, Plaintiff's reliance on *Peschel v. City of Missoula*, 664 F.Supp.2d 1137 (D. Mont. 2009), is misplaced. Notwithstanding the change in the law,[9] the Court finds the instant case bears no resemblance to the facts of *Peschel*. There, dash cam footage captured a disturbing encounter between police and the plaintiff and was viewed by several police officers before it was inexplicably "lost." *Peschel*, 664 F.Supp.2d at 1140-41. Without the video, the case morphed from a straightforward 42 U.S.C. § 1983 case about an arrest, into "one about computer forensics and the personal life of a disgraced police officer." *Id*. at 1146. While the Court does not doubt Albertson's

---

[9] In *Peschel*, the court relied on its inherent authority to fashion sanctions. 664 F.Supp.2d at 1141. However, the 2015 amendments to the Federal Rules of Civil Procedure precludes courts from relying on their inherent authority to fashion sanctions under Rule 37(e). *Gregory*, 118 F.4th at 1072.

failure to exercise "a modicum of prudence" to preserve the surveillance footage has resulted in "the unnecessary expenditure of judicial resources—to say nothing of the parties' resources," there has been no fundamental alteration to the case as seen in *Peschel*. *Id*. at 1146. With or without the surveillance video, this remains a slip and fall case.

>    *2.    Sanctions are appropriate under Rule 37(e)(1) because Plaintiff establishes prejudice.*

Under Fed. R. Civ. P. 37(e)(1), "upon finding prejudice to another party from loss of the information" the Court "may order measures no greater than necessary to cure the prejudice." A party is prejudiced when "spoliation prohibits a party from presenting evidence that is relevant to its underlying case." *Collins*, 2024 WL 1054684 at *6. It is within the discretion of the Court "to determine if the spoliation of evidence is prejudicial, and neither party has the burden of establishing or disproving prejudice." *Id*.

Plaintiff argues she is prejudiced based on the disappearance of the pothole and the loss of the surveillance footage because, without either piece of evidence, Plaintiff will have difficulty proving her case in chief at trial. ECF No. 35 at 3, 20. However, as previously discussed, the Court declines to find spoliation based on the failure to preserve the pothole, create photographs of the pothole or otherwise create documents depicting the pothole. Thus, the Court considers Plaintiff's prejudice resulting from the loss of the surveillance footage.

Albertson's argues a finding of prejudice based on the surveillance footage is speculative because it rests on the assumption that surveillance footage would have shown the precise circumstances surrounding the fall. ECF No. 36 at 13. But, as explained above, surveillance footage is relevant if it has any tendency to prove or disprove some portion of Plaintiff's narrative. *Collins*, 2024 WL 1054684 at *4. The Court finds Albertson's failure to retain surveillance footage deprived Plaintiff of relevant information that could have helped prove its case in chief and Plaintiff has been prejudiced. *Lopez*, 2023 WL 3182658 at *6 (citing *Apple Inc v. Samsung Elecs. Co., Ltd.*, 888 F.Supp.2d 976, 993 (N.D. Cal. 2012) ("In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it.") (internal quotation marks and citations

omitted); *see also Deerpoint Grp., Inc. v. Agrigenix, LLC*, Case No. 1:18-cv-00536-AWI-BAM, 2022 WL 16551632, at \*13 (E.D. Cal. Oct. 31, 2022) ("If the moving party ... can show that information was lost because the non-moving party failed to take reasonable steps to preserve the information, a court may find prejudice.") (citation omitted).

## IV.    Remedy

Because the Court finds Albertson's did not act with intent to deprive Plaintiff of use of the missing surveillance footage, the Court lacks the authority to impose sanctions enumerated in Rule 37(e)(2) including striking of the answer or imposing an adverse jury instruction. The Court nonetheless finds Albertson's actions resulted in the failure to preserve—the destruction—of relevant evidence. This resulted in prejudice to Plaintiff's ability to present evidence to the jury that could have, potentially, helped prove her claims.

Rule 37(e)(1) provides that any sanction imposed against a party that fails to take reasonable steps to preserve ESI cannot be greater than that necessary to cure the prejudice suffered by Plaintiff. After considering the Advisory Committee Notes potential sanction (permitting the parties to present evidence and argument to the jury regarding the loss of information") the Court finds as follows:

> Plaintiff is permitted to present evidence and argument to the jury demonstrating that video surveillance from cameras on the exterior of Albertson's were aimed at the parking lot. At least one witness stated that camera footage would have captured the area where Plaintiff fell. Albertson's had a duty to retain surveillance footage of the incident, but none was retained depriving Plaintiff of the ability to use the footage at trial that may have assisted the jury in its evaluation of this case.

## V.    Order

Accordingly, and based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's Motion to Strike (ECF No. 35) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Plaintiff is permitted to present evidence and argument as stated above.

Dated this 26th day of January, 2026.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

18